Argued and submitted April 13, 2015, affirmed March 1, 2017

MELTON J. JACKSON, JR.,
*Petitioner-Appellant,*

*v.*

Steve FRANKE,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV080485; A152333

392 P3d 328

Andy Simrin argued the cause and filed the briefs for appellant.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

--------

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**HADLOCK, C. J.**

In this post-conviction proceeding, petitioner challenged, among other things, the adequacy of legal representation he received in conjunction with his underlying criminal trial, in which he was convicted of first-degree sodomy. One of petitioner's inadequate-assistance claims was based on his lawyer's failure to object to a diagnosis of sexual abuse in the absence of physical corroborating evidence.[1] Petitioner assigns error to the post-conviction court's grant of the defendant superintendent's motion for partial summary judgment, and to the denial of petitioner's cross-motion for partial summary judgment, on that claim. We conclude that petitioner failed to present sufficient evidence, in the context of the cross-motions for summary judgment, to create a genuine dispute regarding whether he was prejudiced by counsel's failure to object to the sexual-abuse diagnosis. Accordingly, the court did not err in granting the superintendent's motion for summary judgment and denying petitioner's cross-motion for summary judgment.[2] We therefore affirm the judgment denying petitioner post-conviction relief.

## I.   LEGAL STANDARDS AND STANDARD OF REVIEW

Post-conviction relief is warranted when there has been a "substantial denial" of "rights under the Constitution of the United States, or under the Constitution of the State

---

[1] The post-conviction petition also alleged that trial counsel was constitutionally inadequate for failing to (1) investigate, develop, and present evidence that the victim and his family members were biased and motivated to testify inaccurately; (2) present expert testimony regarding the propriety of the interview techniques used by the investigative and medical personnel who interviewed the victim; and (3) interview and adequately cross-examine the victim and his family members. With regard to those claims, petitioner assigns error to the post-conviction court's denial of relief after a hearing on the merits. We reject those assignments of error without written discussion.

[2] Petitioner also assigns error to the post-conviction court's grant of defendant's motion to exclude several affidavits of attorney witnesses regarding the prevailing professional norms of attorneys at the time of petitioner's trial. However, petitioner sought to introduce those affidavits only to establish that his lawyer performed inadequately; he did not offer those affidavits to help establish that he was prejudiced by his lawyer's alleged failings. Because we conclude that petitioner failed to create a genuine dispute of material fact regarding prejudice, we need not address whether he came forward with sufficient evidence that his lawyer performed inadequately. Consequently, we also need not address whether the post-conviction court erred when it excluded the affidavits.

of Oregon, or both, and which denial rendered the conviction void." ORS 138.530(1)(a). A criminal defendant is guaranteed the right to adequate counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014); *Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (United States Constitution requires the "effective" assistance of counsel). The test for determining whether a petitioner has been denied adequate assistance of counsel, under both the state and federal constitutions, is two-pronged: First, the petitioner must show that his or her counsel performed inadequately. Second, the petitioner must demonstrate that he or she was prejudiced as a result of counsel's error. *Pereida-Alba v. Coursey*, 356 Or 654, 661-62, 342 P3d 70 (2015); *Strickland*, 466 US at 688. "The burden of proof of facts alleged in the petition shall be upon the petitioner to establish such facts by a preponderance of the evidence." ORS 138.620(2).

"When reviewing rulings on cross-motions for summary judgment, we review the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Ajir v. Buell*, 270 Or App 575, 578, 348 P3d 320 (2015) (internal quotation marks omitted); *see also Putnam v. Angelozzi*, 278 Or App 384, 388, 374 P3d 994 (2016) (in reviewing a grant of summary judgment to the defendant superintendent in a post-conviction case, we "determine whether the court correctly concluded that there are no genuine issues of material fact and that [the] defendant was entitled to judgment as a matter of law"); ORCP 47 C.

## II. THE FACTS AND PROCEDURAL HISTORY

### A. *The Underlying Criminal Proceedings*

In September 2001, petitioner was convicted, after a trial before the court, of one count of first-degree sodomy.[3] The victim of that crime is petitioner's biological son, M.

---

[3] Petitioner was acquitted of two counts of sexual abuse in the first degree.

M had been living in a motel in Vancouver, Washington, with his older siblings, B and N, petitioner, and petitioner's girlfriend. One day, while petitioner was at work, police came to the motel and arrested petitioner's girlfriend on an unrelated charge. M and his siblings were taken into protective custody and placed in the foster home of Gillette.

In December 2000, when M was 10 years old, he visited Gillette's mother, Garden. After Garden observed M touching Gillette's son inappropriately, M began to sob. He disclosed to Garden that petitioner had touched him like that before. Garden informed Gillette, who asked M what had happened between him and petitioner. M told Gillette that petitioner had made M touch him and that petitioner had sodomized him. Gillette relayed M's account to N, and asked N to speak with M. N testified that, when she asked M what had happened, he told her that petitioner "had stuck his penis in [M's] butt."

Gillette reported the incident to the police and an investigation was initiated. In June 2001, M was examined by Dr. Steinberg, a pediatrician with CARES Northwest who specializes in the areas of child abuse and neglect, and developmental disabilities. Steinberg conducted a physical examination of M and found no physical signs of abuse. After the physical examination was complete, Steinberg spoke briefly with M and asked M if anyone had ever yelled at him, hurt him, or touched his "private parts." M replied, "My dad did." During a subsequent interview, M indicated that, when he was six years old, petitioner had sodomized him and threatened to kill him if he told anyone about it. After considering M's medical, social, and behavioral history, the physical examination, and M's statements and demeanor during the interview, Steinberg reached a "medical diagnosis [that] was highly concerning for sexual abuse." Steinberg testified at trial about the examination and diagnosis. Defense counsel did not object to the admission of Steinberg's testimony.

Petitioner appealed his judgment of conviction, and we affirmed without written opinion. *State v. Jackson*, 208 Or App 757, 145 P3d 1145 (2006), *rev den*, 342 Or 473 (2007).

B.  *The Post-Conviction Proceedings*

Petitioner sought post-conviction relief, alleging, among other things, that his trial attorney provided constitutionally inadequate assistance under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. One of petitioner's allegations was that counsel was inadequate for failing to object to Steinberg's diagnosis of sexual abuse in the absence of physical corroborating evidence. With regard to that allegation, the superintendent filed a motion for partial summary judgment and petitioner filed a cross-motion for partial summary judgment. After a joint hearing on the summary judgment motions, the court granted the superintendent's motion and denied petitioner's motion.

In support of his motion for partial summary judgment, the superintendent argued that petitioner had failed to establish that counsel performed inadequately by not objecting to Steinberg's testimony because, at the time of petitioner's trial in 2001, "it was not an error to admit an expert's testimonial diagnosis of child sexual abuse." The superintendent argued that no Oregon appellate court had ruled otherwise. He pointed to *State v. Sanchez-Cruz*, 177 Or App 332, 346, 33 P3d 1037 (2001), *rev den*, 333 Or 463 (2002), in which we held that "the probative value of [a sexual abuse] diagnosis was not substantially outweighed by any of the reasons against admission in OEC 403." The superintendent contended that it was not until the Supreme Court issued *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), that diagnoses of sexual abuse absent physical evidence of abuse were deemed inadmissible under OEC 403.

The superintendent argued that *Southard* and its progeny should not apply retroactively to inadequate-assistance claims for which the underlying convictions occurred before October 1, 2009, the date on which *Southard* issued. The superintendent explained that an attorney's performance should be evaluated based on the state of the law at the time of the trial, and that counsel "'need not be clairvoyant.'" (Quoting *Umberger v. Czerniak*, 232 Or App 563, 565, 222 P3d 751 (2009), *rev den*, 348 Or 13 (2010).) Relying largely on *Umberger* and *Balogh v. Howton*, 233 Or App 614,

227 P3d 757, *rev den,* 348 Or 461 (2010), two per curiam opinions in which we held that attorneys were not inadequate for failing to object to sexual-abuse diagnoses before *Southard,* the superintendent argued that he was entitled to summary judgment on the related inadequate-assistance claim.

Petitioner opposed the superintendent's motion for partial summary judgment and filed a cross-motion for partial summary judgment on the same allegation. In response to the superintendent's arguments, petitioner contended that the superintendent's reliance on *Umberger* and *Balogh* was misplaced because the petitioners in those post-conviction proceedings had presented no "empirical information" about the practice and expectations of the legal community and the prevailing professional norms for Oregon attorneys facing evidence of sexual abuse diagnoses without physical corroboration before *Southard.* Petitioner argued that, without such evidence, the petitioners in those cases had failed to meet their burdens of establishing inadequate performance. However, unlike the petitioners in *Umberger* and *Balogh,* petitioner urged, he had offered ample evidence of the prevailing professional norms of attorneys facing the admission of sexual-abuse diagnoses in 2001.

Petitioner also countered the superintendent's retroactivity argument, contending that the "retroactivity methodology" used in Oregon post-conviction cases applies to newly announced constitutional rules and did not apply to the present case because *Southard* was decided on the basis of the Oregon Evidence Code, not the state or federal constitutions. Further, even if the retroactivity methodology did apply, petitioner argued, *Southard* and its progeny did not establish a *new* rule of law because those cases relied on "well understood" and "long held" principles from the 1980s. In support of that proposition, petitioner cited, among other cases, *State v. Lupoli,* 348 Or 346, 357, 234 P3d 117 (2010), in which the Supreme Court explained that it had "long held that one witness may not give an opinion on whether he or she believes another witness is telling the truth."

In support of his cross-motion for partial summary judgment, petitioner argued that it was common practice for

Oregon attorneys in 2001 to object to testimony about sexual-abuse diagnoses that were uncorroborated by physical evidence of abuse, and that counsel's failure to do so resulted in inadequate representation. In support of that claim, petitioner offered, and the post-conviction court admitted, affidavits from petitioner's trial and appellate attorneys, which petitioner relied on in support of his cross-motion for partial summary judgment.[4]

Petitioner's appellate attorney, Allen, stated in her affidavit that, following this court's *en banc* opinion in *State v. Trager*, 158 Or App 399, 974 P2d 750, *rev den*, 329 Or 358 (1999), she and other attorneys in the state public defender's office believed that "the issue of whether a diagnosis of sexual abuse in the absence of physical corroborating evidence constituted an impermissible opinion was a viable issue that should continue to be raised at every available opportunity at trial and on appeal." Allen stated that *Trager* was significant because it was decided by a "badly fractured" court and the "disparate opinions appeared to be inconsistent with a long line of cases from the Supreme Court." And, although the Supreme Court ultimately denied review in that case, one justice indicated that he would have allowed review. *State v. Trager*, 329 Or 358, 994 P2d 125 (1999) (denying review). Thus, according to Allen, attorneys in the state public defender's office continued to brief the issue when, unlike in the present case, it was preserved for appeal.

Petitioner's trial attorney, Jonasson, stated in his affidavit that he had had little time to prepare for petitioner's trial and was unaware of the *Trager* decision and the fact that a Supreme Court justice would have allowed review. He stated that his decision not to object to Steinberg's testimony was not the result of any strategic or tactical choice, but was simply a reflection of the fact that he was not aware that there was a "potentially legitimate legal objection to the evidence."

Based in part on those affidavits, petitioner argued that, even if trial counsel had not been aware of the *Trager* decision, he should have been aware of the Supreme Court's

---

[4] The post-conviction court excluded other affidavits that petitioner offered. *See* 284 Or App at 2 n 2.

earlier opinions in *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983), *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988), and *State v. Keller*, 315 Or 273, 844 P2d 195 (1993). In those cases, the court had held that no expert may give an opinion as to whether he believes a witness is telling the truth. Petitioner contended that Steinberg's diagnosis, in the absence of physical evidence, constituted an impermissible comment on M's credibility. He likened Steinberg's testimony to the testimony deemed improper in *Middleton*, *Milbradt*, and *Keller*, which preceded petitioner's trial by many years.

Petitioner also argued in his cross-motion for summary judgment that his attorney's inadequacy at trial caused him to suffer prejudice. He claimed that, had trial counsel objected to Steinberg's diagnosis, Allen would have raised the issue on direct appeal. Petitioner acknowledged that this court would likely have affirmed petitioner's conviction in accordance with the relevant case law at that time. Nonetheless, he argued, the Supreme Court might have granted review for the same reasons that it eventually granted review in *Southard*. According to Allen,

> "[a]lthough it could not have been predicted in advance with certainty when the Oregon Supreme Court would allow review in a case presenting the sexual abuse diagnosis issue, the fact of the matter is that the court did allow review of the issue. As a consequence, I cannot say with absolute certainty that, if [petitioner's] trial attorney had raised the issue, it would have changed the outcome of his case. But I can say with confidence, because the Supreme Court did eventually accept the issue, that the failure of [petitioner's] trial attorney to raise the issue at least did have a tendency—a reasonable probability—of affecting the outcome of his case."

Thus, petitioner argued, trial counsel's failure to object to Steinberg's testimony caused him prejudice.

The superintendent responded to petitioner's prejudice argument in a supplemental memorandum, contending that the argument amounted to "unsubstantiated speculation." That was so, the superintendent argued, because "no one could reliably predict when the Oregon Supreme Court

would address [the *Southard*] rule of law, much less what the actual Oregon Supreme Court decision would be."

After a hearing on the cross-motions for summary judgment, the post-conviction court issued an order granting the superintendent's motion and denying petitioner's motion. The post-conviction court agreed with the superintendent that petitioner's arguments regarding prejudice were too speculative. The court explained:

"It is speculative to suggest that the Oregon Supreme Court would have chosen petitioner's case on appeal to issue the *Southard* rule. Any suggestion that the Oregon Supreme Court would have chosen petitioner's case on appeal to issue the actual *Southard* rule of law is necessarily informed by the hindsight of the actual *Southard* decision itself. Prior to the actual *Southard* decision, no one could reliably predict when the Oregon Supreme Court would address that particular rule of law, much less what the actual Oregon Supreme Court decision would be. In the absence of an affidavit from an Oregon Supreme Court Justice confirming that petitioner's case would have been the vehicle for the principle of law announced in *Southard*, petitioner's claims in this regard are unsubstantiated speculation."

After a hearing on petitioner's remaining claims, the post-conviction court entered judgment for the superintendent.

### III. LEGAL ANALYSIS

On appeal, petitioner challenges the court's summary judgment determinations, largely reprising the arguments he made below. He asserts that the questions before us "are whether [his attorney] provided constitutionally inadequate assistance of counsel by failing to object to Steinberg's testimony and, if so, was petitioner prejudiced as a consequence." Because we determine it to be dispositive, we begin—and end—with the issue of prejudice.[5] *See*

---

[5] In his initial motion for partial summary judgment, the superintendent expressly raised only whether petitioner could establish that his lawyer rendered constitutionally inadequate assistance when he did not object to Steinberg's testimony. The superintendent did not, at that point, expressly raise "lack of prejudice" as a basis for his motion. However, petitioner then cross-moved for partial summary judgment on the same inadequate-assistance claim, raising both deficient performance *and* prejudice. *See* 284 Or App at 8. As noted, the superintendent's

*Strickland*, 466 US at 697 ("a court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"); *Mesta v. Franke*, 261 Or App 759, 785, 322 P3d 1136 (2014) (addressing "the prejudice prong of the analysis" first because it was dispositive).

For petitioner to prove prejudice under the state constitution, he was required to demonstrate that counsel's failure had "a tendency to affect the result of the prosecution." *Green v. Franke*, 357 Or 301, 321, 350 P3d 188 (2015). The Supreme Court has explained that "the tendency to affect the outcome standard demands more than mere possibility, but less than probability."[6] *Id.* at 322. For petitioner to prove prejudice under the federal constitution, he needed to demonstrate that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694.

In the context of the cross-motions for summary judgment, petitioner presented the post-conviction court

---

response characterized petitioner's prejudice argument as "unsubstantiated speculation." *Id.* at 8-9.

Petitioner did not argue below, and does not argue on appeal, that—in the context of those cross-motions for partial summary judgment—it was improper for the post-conviction court to grant summary judgment to the superintendent on the basis of a ground (lack of prejudice) not raised in the superintendent's initial motion. *Cf. Eklof v. Steward*, 360 Or 717, 385 P3d 1074 (2016) (concluding that we erred in affirming the post-conviction court's grant of summary judgment based on a ground asserted for the first time in the state's reply memorandum because that ground was not "raised in the motion" and it would have been improper for the post-conviction court to grant summary judgment on that basis).

[6] We cite the *Green* "tendency to affect" standard for prejudice here because petitioner's claim ostensibly relates to an objection that he contends his lawyer should have made to evidence admitted at trial. However, it is arguable that a higher standard—one of probability—should apply in this context, as petitioner's *real* argument is that his trial lawyer should have set up the argument that ultimately prevailed in *Southard*, in hopes that the Supreme Court would have granted review on that issue in his direct appeal, rather than in *Southard. See Guinn v. Cupp*, 304 Or 488, 496, 747 P2d 984 (1987) (explaining that a post-conviction petitioner claiming inadequate assistance of appellate counsel for failing to assert a claim on appeal must establish, in addition to inadequate performance, that, "had the claim of error been raised, it is more probable than not that the result would have been different"). We need not decide whether the *Guinn* standard might apply in this context, given our determination that petitioner cannot prevail even under the more generous standard articulated in *Green*.

with a very narrow argument as to why his attorney's failure to object to Steinberg's testimony caused him prejudice. He did not argue that the result of his trial could have been different had counsel objected. Nor did he argue that, had counsel preserved the issue by objecting, we might have overturned his conviction on direct appeal. Rather, he argued that, had counsel preserved the issue for appellate review, the Supreme Court might have granted discretionary review of petitioner's case and might have issued the same ruling that it did years later in *Southard*.

On appeal, petitioner acknowledges "the uncertainty of when the Supreme Court would take up the [*Southard*] issue." However, he argues, that uncertainty "does not mean that [the lack of a *Southard*-type objection at trial] had no tendency to affect the outcome of petitioner's case." In response, the superintendent renews his contention that petitioner's prejudice argument is too speculative. For the reasons set out below, we agree with the superintendent.

In the context of this case, our evaluation of whether petitioner was entitled to summary judgment on the issue of prejudice requires us to consider that question both from a factual perspective and from a legal perspective. As a factual matter, petitioner offered little to no evidence supporting his contention that the Supreme Court might have granted review of his case had counsel preserved the *Southard* issue by objecting to Steinberg's testimony at trial. Petitioner relied primarily on the affidavit of Allen, who opined that, although she could not say with "absolute certainty" that, had trial counsel objected to Steinberg's testimony, "it would have changed the outcome of his case," she could say with "confidence" that, because the Supreme Court eventually accepted the issue for review in *Southard*, counsel's failure to raise the issue "at least did have a tendency—a reasonable probability—of affecting the outcome of his case." The post-conviction court was not persuaded that Allen's opinion, without further evidence to demonstrate that the Supreme Court might have granted review of petitioner's case had the issue been preserved and briefed, was sufficient. It concluded that, "[p]rior to the actual *Southard* decision, no one could reliably predict when the Oregon Supreme Court would address that particular rule of law, much less

what the actual Oregon Supreme Court decision would be." We agree with the court's determination that petitioner did not present evidence of more than a "mere possibility" that counsel's alleged error affected the result of his case. *Green*, 357 Or at 322.

At the outset, we observe that the opinion that Allen expressed in her affidavit was not based on any attributes of petitioner's case that might have made it a particularly good candidate for Supreme Court review of the *Southard* issue. That is, the affidavit does not say anything about why *petitioner's* case—as compared to any other—was likely to get the Supreme Court's attention. And, indeed, nothing in the record points in that direction. If anything, the fact that petitioner's criminal case was tried to a judge, rather than to a jury, means that it might not have flagged all of the same concerns that are reflected in the *Southard* opinion. *See Southard*, 347 Or at 140-41 (noting "substantial risk" that a jury would be "overly impressed" by a sexual-abuse diagnosis that "came from a credentialed expert").

Thus, Allen's affidavit does not raise any disputed questions of *fact* regarding whether the Supreme Court might have chosen to grant review in this case. Indeed, the affidavit does nothing other than observe that, had petitioner preserved a *Southard* argument and raised it (unsuccessfully) on appeal, the Supreme Court theoretically could have granted review on that issue, as it later did in *Southard*. In the end, the affidavit adds no evidentiary support to petitioner's argument regarding prejudice, which reduces to a contention that—*as a matter of law*—any post-conviction petitioner establishes the prejudice prong of a post-conviction claim merely by showing that—pre-*Southard*— his lawyer could have, but did not, raise a *Southard*-type objection to evidence of a sexual-abuse diagnosis.

We therefore consider the prejudice question from that purely legal perspective and, in doing so, conclude that petitioner's argument shows nothing more than a "mere possibility" that the Supreme Court would have granted review in petitioner's case had petitioner's lawyer made a *Southard*-type objection at trial. The Supreme Court has, of course, complete discretion whether to allow review of a decision of

this court. *See* ORAP 9.07 (the Supreme Court "retains the inherent authority to allow or deny any petition for review"). Accordingly, it is difficult to predict whether the court is likely to grant review of an issue in any particular case. Absent any indication that the Supreme Court was seeking a case with attributes like petitioner's to use as a vehicle for addressing the *Southard* issue, nothing but speculation supports petitioner's contention that the court might have granted review in his case.

Indeed, before it granted review in *Southard*, the Supreme Court had denied review of similar issues in other cases, some of which were decided shortly after petitioner's trial and direct appeal. In *Sanchez-Cruz*, for example, the court denied a petition for review of our decision in which we held that the probative value of a diagnosis of child sexual abuse was not substantially outweighed "by any of the reasons against admission in OEC 403." 177 Or App at 346. Specifically, we had rejected the defendant's arguments that admission of expert testimony from a CARES physician that the complaining witness was a sexual assault victim at the hands of the defendant unfairly "'stamp[ed]' the expert with 'legal' approval," led to a "time-consuming and confusing battle of experts," and "'raise[d] the spectre' of the question of whether a criminal defendant can compel a state's witness to submit to an examination." *Id.* at 344-46. Ultimately, we held that the defendant "failed to establish that the probative value of this evidence was substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay or cumulative evidence." *Id.* at 346.

The defendant in *Sanchez-Cruz* petitioned for review in the Supreme Court, arguing that the trial court erred in admitting the expert testimony because it was not based on "sound scientific reasoning or methodology," but rather was based on subjective criteria. Thus, the defendant argued, it was not admissible scientific evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 292, 899 P2d 663 (1995). The petition for review noted that the issue had been properly preserved, and that the case was "free from factual disputes or procedural obstacles

that could preclude [the Supreme Court] from addressing the desired issue." In February 2002, five months after petitioner's trial in the present case, the Supreme Court denied review of the issue. *State v. Sanchez-Cruz*, 333 Or 463, 42 P3d 1245 (2002) (denying review).[7]

Likewise, in *State v. Mastne*, 205 Or App 112, 132 P3d 1075, *rev den*, 341 Or 80 (2006), the defendant petitioned the Supreme Court to review our 2006 decision affirming without opinion a conviction for six counts of first-degree sexual abuse. In that case, a nurse practitioner who worked with CARES had testified that the complaining witness had been sexually abused. She also testified that a physical examination of the complainant revealed nothing abnormal. The review petition in *Mastne* proposed the following rule of law: "Where the only evidence to support a diagnosis of sexual abuse is a complainant's allegations, expert testimony regarding the diagnosis is an impermissible comment on the credibility of a witness." The review petition challenged the admissibility of the evidence under *Brown* and *O'Key* as lacking a proper scientific foundation, and under *Middleton* and *Milbradt* as constituting an improper comment on the complainant's credibility. The Supreme Court denied review. of the issue in June 2006, six months after petitioner's brief was filed on direct appeal in the present case. *State v. Mastne*, 341 Or 80, 136 P3d 1123 (2006) (denying review).

The issues raised in the review petitions in *Sanchez-Cruz* and *Mastne* resemble the questions that were later raised in the petition for review in *Southard*: (1) "Is a medical diagnosis of sexual abuse that is based solely on the child's claim of abuse and his behavior, without any confirming physical evidence, scientifically valid under the requirements of [*Brown* and *O'Key*]?"[8] (2) "Is the uncritical faith

---

[7] We acknowledge that, in *Sanchez-Cruz*, there was some evidence of physical abuse to corroborate the expert's diagnosis of sexual abuse. Thus, the facts in that case differ from the facts here and in *Southard*. However, the petition for review filed in *Sanchez-Cruz* raised many of the same issues that petitioner raises here in support of his claim that the Supreme Court might have granted review in his case.

[8] Again, there was evidence of physical abuse in *Sanchez-Cruz*, distinguishing that case from *Southard*. But this case differs from *Southard*, too, in that petitioner's criminal case was tried to the court, not to a jury.

that factfinders place in a doctor's diagnosis that is within a 'reasonable medical certainty' unfairly prejudicial when balanced against the limited scientific validity of a diagnosis that is based on the examiner's subjective belief that the child is telling the truth?" (3) "Is a diagnosis of sexual abuse that is heavily based on the evaluator's detailed explanation as to why the child's statement is truthful an impermissible comment on the credibility of the witness?"

Particularly in light of the similarity among the issues raised in the petitions for review and the timing of the Supreme Court's denial of review in *Sanchez-Cruz* and *Mastne*, the post-conviction court did not err when it concluded that petitioner had not established any basis for a determination of prejudice. That is, petitioner offered no basis on which the post-conviction court could have found that trial counsel's failure to object to Steinberg's testimony tended to affect the outcome of petitioner's case. *Green*, 357 Or at 321. And, for the same reasons, the court properly determined that petitioner had failed to present sufficient evidence of a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. *Strickland*, 466 US at 694; *see also Mesta*, 261 Or App at 783 (appellate counsel was not inadequate for failing to raise *Southard* issue on direct appeal prior to the Supreme Court's decision in *Southard*: "[A]ppellate counsel may have reasonably perceived that the only direct benefit that would [be] obtain[ed] by asserting an OEC 403 argument in this court would be the chance to raise that argument in petitioning the Supreme Court for review of our decision. Any prospective value in that chance, however, was entirely contingent on the Supreme Court not just reaching the OEC 403 issue in *Southard*, but deciding the case on that ground and in a manner favorable—and applicable—to petitioner's claim. Without the benefit of hindsight—and perhaps even with it—it was not at all obvious from appellate counsel's position at the time that the stars would align so propitiously." (Footnote omitted.)).

In sum, petitioner failed to present any evidentiary or legal basis supporting a determination that he was prejudiced by his attorney's failure to object to Steinberg's diagnosis of sexual abuse. Accordingly, the post-conviction

court did not err in granting the superintendent's motion for partial summary judgment and denying petitioner's cross-motion for summary judgment.

Affirmed.