Submitted on remand from the Oregon Supreme Court  March 5, 2019, affirmed
June 3, 2020

## MELTON J. JACKSON, JR.,
*Petitioner-Appellant,*

*v.*

## Steve FRANKE,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

### Umatilla County Circuit Court
CV080485; A152333

467 P3d 779

This is a post-conviction proceeding on remand from the Oregon Supreme Court. In 2001, petitioner was convicted of first-degree sodomy. He petitioned for post-conviction relief, claiming that his trial counsel was constitutionally inadequate and ineffective for failing to object when a doctor who had examined the child victim testified to a diagnosis of "highly concerning for sexual abuse." Eight years after petitioner's trial, the Supreme Court decided *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), in which it held that a medical diagnosis of sexual abuse is inadmissible in the absence of physical evidence of abuse. In petitioner's view, that development in the law was foreseeable at the time of his trial, such that his trial counsel was inadequate and ineffective for failing to preserve the issue for appeal. The post-conviction court denied relief. In its first opinion, the Court of Appeals affirmed solely on the basis that petitioner had not established prejudice. The Supreme Court reversed—holding that petitioner had adequately established prejudice—and remanded for the Court of Appeals to determine the remaining legal issues, specifically whether petitioner's trial counsel performed deficiently and whether four affidavits submitted on that issue were properly stricken by the post-conviction court. *Held*: The post-conviction court did not err in concluding that petitioner's trial counsel did not perform deficiently, given the state of the law at the time of petitioner's 2001 trial. At the time of trial, there was controlling authority that the testimony was admissible. The change in the law that occurred eight years later, when the Supreme Court decided *Southard*, was not reasonably foreseeable in 2001. The post-conviction court also did not err in striking the affidavits.

Affirmed.

On remand from the Oregon Supreme Court, *Jackson v. Franke*, 364 Or 312, 434 P3d 350 (2019).

Rick J. McCormick, Senior Judge.

Andy Simrin filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Kathleen Cegla, Assistant Attorney General, filed the answering brief for respondent. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

This case comes to us on remand from the Supreme Court. In 2001, petitioner was convicted of first-degree sodomy. He petitioned for post-conviction relief, claiming, as relevant here, that his trial counsel was constitutionally inadequate and ineffective for failing to object when a doctor who had examined the child victim testified to a diagnosis of "highly concerning for sexual abuse." Eight years after petitioner's trial, the Supreme Court decided *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), holding that, absent physical evidence of abuse, such testimony is inadmissible under OEC 403. It extended that holding the following year in *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), indicating that such testimony is also improper vouching. In petitioner's view, those developments in the law were foreseeable at the time of his trial, such that his trial counsel performed deficiently in failing to object to the doctor's testimony. The post-conviction court denied relief. We affirmed on the basis that petitioner had not established prejudice. On review, the Supreme Court reversed on that issue and remanded for consideration of the other issues that we had not reached in our first opinion. Having considered the remaining issues, we again affirm.

## I.   PROCEDURAL FACTS

In May 2001, a grand jury indicted petitioner on one count of first-degree sodomy, ORS 163.405, and two counts of first-degree sexual abuse, ORS 163.427. The alleged victim was petitioner's minor son, M.

Petitioner waived his right to a jury and was tried to the court in September 2001. The case was a classic credibility contest between petitioner and his son, as there were no eyewitnesses to any abuse. In that context, the prosecution sought to bolster its case by introducing evidence from Dr. Steinberg, a pediatrician with CARES Northwest who had examined M in June 2001. Steinberg testified that she did not find any physical evidence of abuse in her examination but that, based on interviewing M and reviewing his medical, social, and behavioral history, she had made a medical diagnosis of "highly concerning for sexual abuse."

Defense counsel did not object to Steinberg's testimony. For the defense case, petitioner testified on his own behalf, denying any inappropriate sexual contact with his son. After hearing all of the evidence, the trial court found petitioner guilty of first-degree sodomy. It acquitted him of the other two charges.

Petitioner appealed the resulting judgment of conviction. We affirmed without opinion, and the Supreme Court denied review. *State v. Jackson*, 208 Or App 757, 145 P3d 1145 (2006), *rev den*, 342 Or 473 (2007).

Petitioner petitioned for post-conviction relief, raising numerous claims, including identifying 24 ways that his trial counsel allegedly provided inadequate assistance of counsel in violation of Article I, section 11, of the Oregon Constitution and ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. One of those claims—identified as claim 16(j)—was that "[c]ounsel failed to object to a diagnosis relating to sexual abuse in the absence of physical corroborating evidence." As discussed more later, to prevail on a claim for inadequate or ineffective assistance of counsel, a post-conviction petitioner must prove both that his counsel's performance was constitutionally deficient and that he suffered prejudice as a result. *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487 (2014).

The superintendent moved for summary judgment on claim 16(j), and petitioner cross-moved for summary judgment on the same claim. Petitioner submitted multiple affidavits in support of his motion, some of which the superintendent moved to strike. The post-conviction court struck four affidavits—Exhibits 12, 13, 14, and 24—all affidavits of Oregon attorneys that petitioner contended were relevant to the prevailing norms for competent criminal defense attorneys at the time of petitioner's trial. The court then granted the superintendent's motion for summary judgment and denied petitioner's cross-motion for summary judgment. The court concluded that trial counsel did not perform deficiently in failing to object to Steinberg's testimony, given the state of the law in 2001, and that, in any event, petitioner's theory of prejudice was too speculative to prevail. After the

resolution of claim 16(j) on summary judgment, petitioner's remaining claims were tried. The post-conviction court denied relief on all claims.

Petitioner appeals the denial of post-conviction relief, raising 203 assignments of error. In assignments of error 1 to 200, he contends that the post-conviction court erred in striking Exhibits 12, 13, 14, and 24 from the summary judgment record. In assignment of error 201, he contends that the post-conviction court erred in granting summary judgment to the superintendent on claim 16(j). In assignment of error 202, he contends that the post-conviction court erred in denying summary judgment to him on claim 16(j). Finally, in assignment of error 203, he contends that the post-conviction court erred in denying post-conviction relief on six other claims unrelated to claim 16(j).

We previously affirmed the post-conviction judgment in *Jackson v. Franke*, 284 Or App 1, 392 P3d 328 (2017), *rev'd*, 364 Or 312, 434 P3d 350 (2019). In doing so, we reached only assignments of error 201, 202, and 203. Regarding assignments of error 201 and 202, we held that the post-conviction court had not erred in ruling as it did on claim 16(j), because petitioner had "failed to present any evidentiary or legal basis supporting a determination that he was prejudiced by his attorney's failure to object to Steinberg's diagnosis of sexual abuse." *Id*. at 15-16. "Because we conclude[d] that petitioner [had] failed to create a genuine dispute of material fact regarding prejudice, we [did] not address whether he came forward with sufficient evidence that his lawyer performed inadequately." *Id*. at 2 n 2. We also did not need to "address whether the post-conviction court erred when it excluded the affidavits." *Id*. As for assignment of error 203, we rejected that assignment on the merits without written discussion. *Id*. at 2 n 1.

On review, the Supreme Court reversed as to assignments of error 201 and 202. *Jackson v. Franke*, 364 Or 312, 434 P3d 350 (2019).[1] The court limited its opinion to the

---

[1] The Supreme Court did not take review as to assignment of error 203 and made no mention of that assignment of error in its published opinion. Our rejection of assignment of error 203 therefore is final at this point, as both parties recognize.

"narrow issue" of prejudice, concluding that petitioner had sufficiently established prejudice to be entitled to partial summary judgment on that prong of claim 16(j). *Id*. at 331. Specifically, the court concluded that, given the timing of petitioner's appeal relative to when *Southard* was accepted for review and decided, "there was more than a *mere possibility* that, if the issue had been preserved and adequately presented, [the Supreme Court] would have allowed review and reversed his conviction," which was all that was needed to establish prejudice. *Id*. (emphasis added). In so concluding, the court recognized that it was relying on the "tremendous advantage" of hindsight. *Id*. at 327 ("[I]n evaluating the prejudice prong, we have one tremendous advantage: hindsight.").

Having decided the prejudice issue, the Supreme Court remanded the case to us to consider the issues and assignments of error that we did not reach the first time, "including whether petitioner's trial counsel's failure to object fell below constitutionally required standards and whether the post-conviction court erred in excluding affidavits potentially relevant to that question." *Id*. at 331. The Supreme Court expressed no opinion on those issues. *See id*. at 321 (describing prejudice as the "only issue" before it, and "assum[ing]—without deciding" deficient performance); *id*. at 319 n 4 (not considering assignments of error 1-200, because the affidavits relate to "the inadequate performance element, rather than prejudice element"). Indeed, as to the performance issue, the court emphasized the important temporal difference in how performance and prejudice are assessed, presumably to stave off any suggestion that its prejudice holding was also dispositive of the performance issue: "We emphasize that, while the *prejudice* prong may be informed by events that occurred after petitioner's trial, that determination is separate from the assessment of whether trial counsel's performance fell below the standard of reasonable exercise of professional skill and judgment," because counsel's effectiveness is "determined in light of the law and the views and conduct of competent counsel as they existed at the time the attorney acted or failed to act," whereas prejudice is "determined in hindsight." *Id*. at 327 n 9 (emphasis in original).

Thus, this appeal is now before us for the second time, to address whether the post-conviction court erred in (1) striking Exhibits 12, 13, 14, and 24, and (2) ruling on summary judgment that, given the state of the law in Oregon in 2001, petitioner's trial counsel did not render constitutionally deficient performance by not objecting to Steinberg's testimony.

## II.   RELEVANT LEGAL STANDARDS

"Under the Oregon Constitution, a claim of constitutionally inadequate counsel requires a post-conviction petitioner to show two elements: (1) that trial counsel had failed to exercise reasonable professional skill and judgment, and (2) that that failure had a tendency to affect the result of the trial." *Jackson*, 364 Or at 316 (internal quotation marks omitted). Similarly, a claim of ineffective assistance under the federal constitution requires the petitioner to prove (1) that trial counsel's performance "fell below an objective standard of reasonableness *** under prevailing professional norms," and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 686, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984). The state and federal standards are interpreted independently but are "functionally equivalent." *Montez*, 355 Or at 6-7.

In evaluating a lawyer's performance for purposes of an inadequate- or ineffective-assistance claim, we "must make every effort to evaluate [the] lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight." *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002). In the words of the United States Supreme Court:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circum-
stances of counsel's challenged conduct, and to evaluate the
conduct from counsel's perspective at the time."

*Strickland*, 466 US at 689 (citation omitted).

With respect to summary judgment, "[w]hen review-
ing rulings on cross-motions for summary judgment, we
review the record for each motion in the light most favor-
able to the party opposing it to determine whether there is a
genuine issue of material fact and, if not, whether the mov-
ing party is entitled to judgment as a matter of law." *Ajir v.
Buell*, 270 Or App 575, 577-78, 348 P3d 320 (2015) (internal
quotation marks and brackets omitted). In the present pos-
ture, we "determine whether the court correctly concluded
that there are no genuine issues of material fact and that
[the superintendent] was entitled to judgment as a matter of
law." *Putnam v. Angelozzi*, 278 Or App 384, 388, 374 P3d 994
(2016) (review of grant of summary judgment to the superin-
tendent in a post-conviction case).

### III.   STRICKEN AFFIDAVITS

The first issue before us on remand is the post-
conviction court's striking of four affidavits from the sum-
mary judgment record, which rulings are the subject of
petitioner's assignments of error 1 to 200. (Petitioner has
assigned error to the striking of each sentence of each affi-
davit.) Petitioner asserts that the post-conviction court erred
in striking the affidavits as irrelevant, because they are rel-
evant to the "prevailing professional norms" in Oregon in
2001 regarding objecting to testimony like Steinberg's.

The exclusion of evidence on relevancy grounds is
reviewed for errors of law. *State v. Gibson*, 338 Or 560, 569,
113 P3d 423 (2005). Evidence is "relevant" if it has "any
tendency to make the existence of any fact that is of conse-
quence to the determination of the action more probable or
less probable than it would be without the evidence." OEC
401. "OEC 401 provides a very low threshold for the admis-
sion of evidence, that is, evidence is relevant so long as it
increases or decreases, even slightly, the probability of the
existence of a fact that is of consequence to the determina-
tion of the action." *State v. Davis*, 336 Or 19, 25, 77 P3d 1111
(2003) (internal quotation marks omitted).

In this case, we conclude that the post-conviction court did not err in striking the four affidavits, for reasons that apply both individually and collectively. We address individual reasons to strike the affidavits in this section, and we address an additional collective reason to strike them in Section IV.

### A.    *Threshold Procedural Matters*

As a threshold matter, the superintendent challenges preservation, questioning whether petitioner sufficiently addressed the component parts of the affidavits in the post-conviction proceeding, notwithstanding his moving *in limine* as to each line of each affidavit. We conclude that petitioner's claims of error regarding the stricken affidavits are adequately preserved and do not address that issue further.

The superintendent also argues that petitioner has failed to challenge all of the alternative bases on which the post-conviction court struck the affidavits, limiting his arguments to relevancy, and that that alone is a basis to affirm the rulings. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) (requiring affirmance when a party "fail[s] to challenge the alternative basis of the trial court's ruling"). The superintendent is potentially correct, in that the post-conviction court at least initially struck the affidavits on all six grounds argued by the superintendent, including lack of foundation, and petitioner addresses only relevancy in his appellate briefing. At the same time, the record is not entirely clear, due to subsequent statements by the court, and petitioner's argument that the affidavits were stricken only as irrelevant is not entirely specious. Given the record ambiguity, we proceed to the merits, assuming without deciding that any fact averments in the affidavits were stricken only as irrelevant, because it does not ultimately affect our disposition.

### B.    *Exhibit 12 (Gorski Affidavit)*

Exhibit 12 is the affidavit of Mark S. Gorski, a criminal defense lawyer who has practiced in Oregon since 1991. In his affidavit, Gorski describes how he personally

prepares for a trial. He expresses a positive view of a listserv maintained by the Oregon Criminal Defense Lawyers' Association (OCDLA). He states that "virtually every other criminal defense attorney [he has] ever known in Oregon" is an OCDLA member. He describes monthly meetings that he attends with a group of other attorneys who specialize in DUII cases to discuss "the legal issues that are in the pipeline in the context of DUII cases." Finally, he expresses his opinions that "any competent attorney must have a nose for where the courts are going, especially where questions of law appear to be open," and that "[a]ny Oregon criminal defense attorney who does not monitor the OCDLA listserv does his clients a grave disservice."

The post-conviction court treated the Gorski affidavit, like all four stricken affidavits, as proffered expert affidavits. Petitioner contends that they should have been treated as fact affidavits, specifically averring to the "fact" of the "prevailing professional norms" in Oregon in 2001, or, alternatively, that it does not matter. Because different standards apply to admit expert evidence, we disagree with petitioner that the distinction does not matter. *See State v. Gherasim*, 329 Or 188, 198, 985 P2d 1267 (1999) (the exclusion of expert opinion testimony is reviewed to determine whether the trial court applied the correct legal principles and for abuse of discretion).

As for the portions of the Gorski affidavit that offer expert opinion testimony on issues such as the correct interpretation of case law and the proper way to practice law, the post-conviction court did not err in striking those portions of the affidavit. Indeed, petitioner has not developed any argument as to how the court erred in striking the opinion portions of the stricken affidavits. *See State v. Woodford*, 293 Or App 484, 487, 428 P3d 971 (2018) ("As a general rule, an expert witness may not testify regarding a legal conclusion."); *see also, e.g.*, *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F3d 1498, 1507 n 6 (9th Cir 1994) ("We have condemned the practice of attempting to introduce law as evidence." (Internal quotation marks omitted.)); Laird C. Kirkpatrick, *Oregon Evidence* § 702.03(7)(c), 632 (6th ed 2013) ("In general, questions of law are for the court and not a proper subject for expert testimony to the jury.").

That leaves fact averments. The few fact averments in the Gorski affidavit, such as the OCDLA membership status of the criminal defense attorneys that he personally knows, are not relevant to prevailing professional norms in Oregon in 2001 with respect to objecting to testimony like Steinberg's during a criminal trial.

C.  *Exhibit 13 (McHenry Affidavit)*

Exhibit 13 is the affidavit of Matthew G. McHenry, who graduated law school in 2004, worked for Metropolitan Public Defender for a year in 2006, and has since worked in private practice. In his affidavit, McHenry first describes his involvement in representing a criminal defendant who was tried and convicted of 13 sex crimes in 2007, but who secured a summary reversal of his conviction in 2009 when the Supreme Court issued its decision in *Southard* while his direct appeal was still pending in the Court of Appeals. McHenry next opines on the correct interpretation of certain case law. Finally, McHenry opines—and it can only be characterized as opinion—as to what "any competent criminal defense attorney" would have done and thought in 2001, three years before McHenry became a lawyer.

The post-conviction court did not err in striking McHenry's affidavit. The opinion statements were properly stricken for the same reasons as Gorski's affidavit, and the few fact averments are not relevant to prevailing professional norms in Oregon in 2001 with respect to objecting to testimony like Steinberg's during a criminal trial.

D.  *Exhibit 14 (Johnson Affidavit)*

Exhibit 14 is the affidavit of Rankin Johnson IV, a criminal defense lawyer who was admitted to practice in Oregon in 1996 and at the Office of Public Defense Services (OPDS) from 1999 to 2005. Johnson attests to his prior service as an expert witness in post-conviction proceedings and attaches his resume to his affidavit. Much of Johnson's affidavit is unabashedly expert opinion testimony about post-conviction legal standards, the proper interpretation of case law, and the merits of the superintendent's briefing. Again, for the same reasons as with Gorski and McHenry,

the post-conviction court did not err in striking Johnson's opinion testimony.

As for fact averments, Johnson's affidavit is the only one of the stricken affidavits that contains fact averments potentially relevant to prevailing professional norms in Oregon in 2001 with respect to objecting to testimony like Steinberg's during a criminal trial. For example, Johnson attests that, while he worked at OPDS, part of its mission was to "provide guidance to the criminal defense trial bar about what we felt were legal issues worthy of preserving for appeal"; that, after *State v. Trager,* 158 Or App 399, 974 P2d 750 (en banc), *rev den*, 329 Or 358 (1999), "we at OPDS felt that the issue [of whether a medical diagnosis of sexual abuse even constituted scientific evidence] was ripe for Supreme Court review, and we did everything we could to encourage trial attorneys to continue to press the issue"; that that issue was "broadly discussed on the OCDLA listserv following the decision in *Trager*"; that there was a "sentiment" in the OPDS office that *Trager* "appeared to be inconsistent" with Supreme Court caselaw; that "Oregon criminal defense did continue to raise and preserve the issue until the Supreme Court allowed review in *Southard* and addressed it"; and that "we continued to brief the issue any time it was preserved." Some of those averments are similar to ones contained in the affidavit of Meredith Allen, an OPDS attorney who represented petitioner in his direct appeal and whose affidavit is part of the summary judgment record.[2]

On their face, Johnson's fact averments are potentially at least *relevant* to prevailing professional norms in 2001, even though they would not entitle petitioner to summary judgment. Johnson's affidavit is largely silent as

---

[2] Much of Allen's affidavit pertains to her own representation of petitioner, such as her attestation that, if the issue had been preserved, she would have challenged the admission of Steinberg's testimony as part of petitioner's direct appeal. However, one paragraph of the affidavit is broader, stating that, "[f]ollowing *Trager*, [Allen] and other attorneys in the State Public Defender's Office continued to believe that the issue of whether a diagnosis of sexual abuse in the absence of physical corroborating evidence constituted an impermissible opinion was a viable issue that should continue to be raised at every available opportunity at trial and on appeal" and that "attorneys in the State Public Defendant's office continued to brief the issue when it was preserved for appeal."

to what was actually happening on the ground in 2001—as distinct from what OPDS "encouraged" attorneys to do during the decade before *Southard* was decided—except when he slips into opinion testimony as to his own perception of the "standard of care" in Oregon in 2001. His statements are largely directed at best practices from the perspective of OPDS, which is not necessarily coextensive with constitutionally adequate performance. But Johnson's fact averments would be relevant under the "very low threshold" for admissibility in OEC 401, *Davis*, 336 Or at 25, but for a more global relevancy hurdle discussed in Section IV. We therefore leave Johnson's affidavit for now, with the understanding that we will return to its fact averments in Section IV.

E.   *Exhibit 24 (Balske Affidavit)*

Exhibit 24 is the affidavit of Dennis N. Balske, an Oregon attorney whose practice focuses primarily on collateral challenges to criminal convictions. Balske's affidavit consists almost entirely of opinion testimony, specifically Balske's opinions regarding how certain case law should be interpreted and how Oregon courts should decide prevailing professional norms in post-conviction cases. His only fact averments describe his personal experience calling witnesses to attest to prevailing professional norms on unspecified issues in an unspecified number of Oregon post-conviction cases in which he represented the petitioner.

Petitioner has developed no argument as to how the post-conviction court erred in striking Balske's affidavit. Indeed, petitioner mentions Balske's affidavit in his opening brief only when he quotes it for purposes of adopting a legal argument from Balske. The post-conviction court did not err in striking Balske's opinion statements, for the same reasons as the other affidavits, and Balske makes no fact averments relevant to prevailing professional norms in Oregon in 2001 with respect to objecting to testimony like Steinberg's during a criminal trial.

IV.   SUMMARY JUDGMENT

We next consider the post-conviction court's summary judgment rulings on claim 16(j), which are the subject

of assignments of error 201 and 202. We conclude that the post-conviction court did not err in granting summary judgment to the superintendent and denying summary judgment to petitioner on the issue of whether petitioner's trial counsel performed deficiently in failing to object to Steinberg's testimony. Our discussion of that issue also reveals a more global relevancy problem with petitioner's four stricken affidavits, including the fact averments in Johnson's affidavit.

Petitioner argues that the post-conviction court erred in ruling as it did on summary judgment, because his affidavits are the only evidence regarding the prevailing professional norms in Oregon in 2001 and they establish that petitioner's trial counsel fell short of those norms. The state responds that the affidavits do not create a dispute of material fact and that the post-conviction court properly decided the performance issue as a matter of law. Along the way, the parties tussle over the general question of whether and when affidavits may be considered in deciding whether a lawyer's assistance was constitutionally inadequate or ineffective, although the gap between the parties' positions has narrowed since the state refined its position at oral argument.

Whether a lawyer performed inadequately or ineffectively is ultimately a legal question for the court. *Burdge v. Palmateer*, 338 Or 490, 494 n 3, 112 P3d 320 (2005) ("Petitioner presented an affidavit from his trial lawyer in which the lawyer asserted that he believed himself to have been 'inadequate' in representing petitioner. 'Inadequacy,' however, is a legal conclusion for the court."). Nonetheless, it is entirely feasible that, in some cases, affidavits or declarations containing fact averments relevant to prevailing professional norms in Oregon at a given point in time on a particular issue could be useful in resolving some types of inadequate- or ineffective-assistance claims. *See, e.g.*, *Wiggins v. Smith*, 539 US 510, 524, 123 S Ct 2527, 156 L Ed 2d 471 (2003) (discussing evidence of professional standards that prevailed in Maryland in 1989); *Wade v. Brockamp*, 268 Or App 373, 388, 342 P3d 142 (2015) (stating, in case in which we affirmed the grant of post-conviction relief, that "the record indicates that criminal defense attorneys generally were aware of [a particular Court of Appeals decision]

and had questioned the continued viability of [a particular uniform jury] instruction in light of that decision").

At the same time, we frequently decide inadequate- or ineffective-assistance claims without such evidence. A claim that a lawyer should have foreseen a particular development in the law is particularly well-suited to resolution based solely on the state of the law at the time of the representation. As petitioner notes, something is foreseeable if it "may reasonably be anticipated." *Webster's Third New Int'l Dictionary* 890 (unabridged ed 2002); *see also Jackson*, 364 Or at 321 n 5 ("This court has implicitly suggested that an attorney may be constitutionally inadequate if he or she fails to anticipate a *foreseeable* change in precedent." (Emphasis added.)). It will be the rare case in which factual averments from local attorneys are helpful, let alone necessary, in deciding whether a particular development in the law was reasonably foreseeable at a given point in time. Rather, that type of analysis typically depends on an objective assessment of the published case law at the point in time.

For examples of cases in which an inadequate- or ineffective-assistance claim was resolved based solely on the state of the law at the time of representation, see, for example, *Wells v. Peterson*, 315 Or 233, 236, 844 P2d 192 (1992) (holding that counsel did not provide inadequate assistance in failing to object to a mandatory minimum sentence, where "the meaning of the statute was not clearly settled" and "[r]easonable counsel could have disagreed about whether to make that argument at the time that the original case was tried"); *Antoine v. Taylor*, 303 Or App 485, 498-99, 465 P3d 238 (2020) (concluding that trial counsel did not render inadequate assistance in failing to move for the state to make a pretrial election of the criminal acts it intended to prosecute, "[g]iven the state of the law at the time of petitioner's trial"); *Hale v. Belleque*, 255 Or App 653, 683, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013) (holding that counsel rendered inadequate assistance in not requesting a particular jury instruction, because reasonable counsel would have requested it "in light of the state of the law at that time"); *Krieg v. Belleque*, 221 Or App 36, 40-41, 188 P3d 413, *rev den*, 345 Or 317 (2008) (concluding that neither trial nor appellate counsel failed to exercise

reasonable professional skill and judgment in not raising a particular sentencing issue, "[g]iven the state of the developing law at the relevant times").

The very issue presented in this case—the foreseeability of *Southard*—is one that we have addressed on multiple occasions. In *Umberger v. Czerniak*, 232 Or App 563, 564, 222 P3d 751 (2009), *rev den*, 348 Or 13 (2010), the petitioner claimed to have received constitutionally inadequate assistance of counsel during his 1998 criminal trial for sodomy and sexual abuse, where his trial counsel had not objected to a doctor's qualifications "to testify about whether the victim had been sexually abused" and there was no physical evidence of abuse. We affirmed the denial of post-conviction relief, given the controlling case law in 1998, particularly *State v. Wilson*, 121 Or App 460, 465-66, 855 P2d 657, *rev den*, 318 Or 61 (1993), in which we had held that such testimony was admissible because it was not "a *direct* comment on the child's credibility." *Umberger*, 232 Or App at 564-65 (emphasis in *Wilson*). Stating that trial counsel "need not be clairvoyant" to render constitutionally adequate assistance, we held in *Umberger* that, "[g]iven the state of the law prior to *Southard*, petitioner's trial counsel did not fail to exercise reasonable professional skill and judgment at petitioner's 1998 trial." *Id*. at 565.

We reached a similar conclusion a year later in *Balogh v. Howton*, 233 Or App 614, 615, 227 P3d 757, *rev den*, 348 Or 461 (2010), in which the petitioner claimed to have received inadequate assistance because his trial counsel "failed to challenge the admissibility of the state's expert witness's 'diagnosis' of sexual abuse." We summarily rejected that argument and affirmed the denial of post-conviction relief, stating that the assignment of error was "controlled by our recent decision in *Umberger*." *Id*. The petitioner's trial counsel "did not fail to exercise reasonable professional skill and judgment" in failing to object to the testimony. *Id*.

In *Logan v. State of Oregon*, 259 Or App 319, 327, 313 P3d 1128 (2013), *rev den*, 355 Or 142 (2014), the petitioner was convicted of sexual abuse of a child and, on the state's appeal of a grant of post-conviction relief, we primarily addressed whether trial counsel's failure to object to

testimony by a CARES staff member about CARES' treatment recommendations for the alleged victim had prejudiced the petitioner. *See id.* (identifying the issue of prejudice as "dispositive"). However, we also expressly stated that, "[t]o the extent that the post-conviction court relied on *Southard* in concluding that trial counsel's performance was constitutionally deficient, it erred," because *Southard* "postdated [the petitioner's] trial *by nearly eight years*," and "trial counsel's performance is to be viewed as of the time of trial." *Id.* at 326 n 5 (emphasis added).

We employed similar reasoning in a slightly different posture in *Mesta v. Franke*, 261 Or App 759, 322 P3d 1136 (2014). In *Mesta*, we held that the petitioner's appellate counsel was not "constitutionally inadequate for failing to raise an argument that the admission of [a] doctor's diagnoses of sexual abuse violated OEC 403"—even though trial counsel had preserved the issue—including not asking to supplement his briefing after *Southard* was accepted for review. *Id.* at 761. Recognizing that "*Southard* represented a substantial departure from previous law," we cautioned that "the potential benefits of raising the OEC 403 issue after the Supreme Court accepted review in *Southard* may seem large; however, those potential benefits appear vastly more speculative without the assistance of hindsight." *Id.* at 781-82. "Although it is tempting, in reviewing the outcome in *Southard*, to say that competent counsel would have raised the argument that was eventually deemed meritorious by the Supreme Court, we must make every attempt to not analyze counsel's performance with the benefit of hindsight." *Id.* at 782-83. We also noted the lack of cited "authority for the proposition that appellate counsel is ineffective for failing to anticipate a change in the law when there is controlling, contrary precedent during the entire pendency of the appeal." *Id.* at 782.[3]

---

[3] Although obviously not precedential, it is worth noting that the United States District Court for the District of Oregon has ruled at least twice in habeas corpus proceedings that an attorney was not constitutionally deficient for failing to foresee *Southard*. *See McLain v. Backletter*, No 3:08-cv-01440, 2012 WL 3116186, at *6-8 (D Or July 27, 2012) (rejecting the petitioner's argument that *Southard* "did not overrule prior law or announce a new rule," recognizing that *Southard* "represented a change in Oregon law," and concluding that trial counsel did not perform deficiently in not objecting to a nurse's testimony

Returning to the present case, petitioner argues that his trial counsel was constitutionally inadequate and ineffective for failing to foresee the Supreme Court's decision in *Southard* and, consequently, object to Steinberg's testimony.[4] In doing so, petitioner relies heavily on the notion that the admissibility of testimony like Steinberg's was an "open question" in 2001. But that is not correct.

An "open question" is a question on which there is no controlling authority. For example, in *Wade*, we held that the petitioner's trial counsel performed deficiently in failing to object to a uniform jury instruction that misstated the law, where there was *no* case law holding that the instruction was good law. 268 Or App at 375, 385-86. Indeed, there was at least one Court of Appeals decision that would have supported arguing that the instruction was wrong. *Id.* at 384. We contrasted that situation from one in which case law already exists and then a court "reverse[s] course." *Id.* at 386 (stating that, in *Miller v. Lampert*, 340 Or 1, 14-16, 125 P3d 1260 (2006), the court "concluded that it was not unreasonable for the petitioner's counsel to fail to anticipate that the Court would 'reverse course' two years after a prior decision"). Thus, although the Supreme Court did not issue a decision holding that the uniform instruction was legally incorrect until after the *Wade* petitioner's trial, when it did so, "the court did not have to confront *any* appellate decision that had held that [that instruction] was good law." *Id.* (emphasis in original); *see also Walraven v. Premo*, 277 Or App 264, 287, 372 P3d 1 (2016) (reversing post-conviction court's denial of relief, based on trial counsel's failure to object to same instruction).

---

at the petitioner's October 2000 trial on sexual abuse charges, where that testimony was admissible under then-controlling Oregon Court of Appeals case law); *Hatchett v. Hill*, No Civ-06-1023, 2011 WL 7443755, at *8-9 (D Or Dec 21, 2011) (concluding that trial counsel did not perform deficiently in not objecting to a doctor's testimony at the petitioner's 1995 trial, given existing Oregon Court of Appeals case law at that time).

[4] By foreseeing the decision in *Southard*, we mean foreseeing the rule announced in *Southard*. Given the timing, to benefit petitioner, the Supreme Court would have had to decide in *petitioner's* case, rather than *Southard*, that a medical diagnosis of sexual abuse is inadmissible in the absence of physical evidence. *See Jackson*, 364 Or at 323-24.

The situation here is different. A legal issue is not an "open question" when there is controlling Court of Appeals case law, even if there is no Supreme Court case law. At the time of petitioner's 2001 trial, there was controlling authority directly on point as to the admissibility of Steinberg's testimony: it was admissible. *Jackson*, 364 Or at 314 ("At trial, petitioner's counsel did not object to certain testimony, and *controlling case law at that time* from the Court of Appeals held that such testimony was admissible." (Emphasis added.)). Eight years before petitioner's trial, we had held in *Wilson*, 121 Or App at 465-66, that a doctor's diagnosis of child sexual abuse was admissible, despite the absence of physical evidence. Sitting en banc in 1999, we reaffirmed that longstanding position in *Trager*, 158 Or App at 405, with all 10 judges of the court agreeing that such evidence was admissible, although there was a split about whether it was scientific evidence requiring a scientific foundation. The Supreme Court denied review in both *Wilson* and *Trager*.

It is an uphill battle at best to argue that a lawyer performed deficiently to the point of constitutional inadequacy and ineffectiveness by not objecting to the admission of evidence that was unequivocally admissible under controlling case law that existed at the time of the representation. Similar to the petitioner in *Mesta*, petitioner has not identified any authority for the proposition that trial counsel is ineffective "for failing to anticipate a change in the law when there is controlling, contrary precedent" at the time of trial. *Mesta*, 261 Or App at 782; *see also Miller*, 340 Or at 16 (holding that a defense attorney was not required to anticipate a reversal of course in controlling law); Ruth Moyer, *Counsel as "Crystal Gazer": Determining the Extent to Which the Sixth Amendment Requires that Defense Attorneys Predict Changes in the Law*, 26 Geo Mason U CR L J 183, 184 (2016) ("As a general rule, defense counsel cannot be deemed ineffective for failing to raise an argument contrary to controlling law at the time of counsel's representation." (Footnote omitted.)).

Although the Supreme Court eventually determined that the *Wilson* line of precedent was wrong, it cannot be said that those decisions were "so obviously" wrong, *Burdge*,

338 Or at 497, that every competent defense attorney in Oregon would have realized they were wrong and sought to preserve an objection for eventual Supreme Court review. Given the controlling case law at the time, trial counsel did not perform deficiently at petitioner's 2001 trial in failing to foresee the Supreme Court's 2009 decision in *Southard*. *Cf. Miller*, 340 Or at 16 (holding that the petitioner's counsel did not fail to exercise reasonable skill and judgment in failing to foresee a change in sentencing law that would occur two years later).

Indeed, we have already reached essentially the same legal conclusion in several other cases. In *Umberger*, *Logan*, and *Balogh*, we held that criminal defense attorneys did not perform deficiently in 1998, 2001, and 2004, respectively, in not foreseeing *Southard* and making an objection to expert testimony related to sexual abuse. *Umberger*, 232 Or App at 564-65; *Balogh*, 233 Or App at 615; *Logan*, 259 Or App at 326 n 5. We reached a similar conclusion in *Mesta* with respect to appellate counsel who filed his opening brief just days before the Supreme Court took review in *Southard*. *Mesta*, 261 Or App at 782. Petitioner argues that this case is different because he offered fact affidavits, whereas there were no fact affidavits in those cases. But inadequacy is ultimately a legal conclusion for the court, *Burdge*, 338 Or at 494 n 3, and whether all competent criminal defense attorneys practicing in Oregon would have foreseen *Southard* and objected to testimony like Steinberg's in a 2001 trial is not a legal conclusion that can or should vary from case to case, depending on affidavits.

The Supreme Court's decision in *Southard* either was or was not reasonably foreseeable to a competent criminal defense attorney practicing in Oregon in 2001. For the reasons already discussed, it was not, and no affidavit would change that conclusion at this point, given existing precedent. Certainly, the fact averments contained in the Johnson and Allen affidavits would not allow, let alone compel, a result for petitioner different than those in *Umberger*, *Balogh*, *Logan*, and *Mesta*. That is another reason—in addition those already discussed in Section III of this opinion—that the post-conviction court did not err in striking

Exhibits 12, 13, 14, and 24. Any fact averments contained in those affidavits, including Johnson's, would not permit a legal conclusion at odds with those in *Umberger*, *Balogh*, *Logan*, and *Mesta*. *See Davis*, 336 Or at 25 (evidence is relevant only if "it increases or decreases, even slightly, the probability of the existence of a fact *that is of consequence to the determination of the action*" (emphasis added)).

## V.   CONCLUSION

With respect to claim 16(j), the post-conviction court did not err in striking Exhibits 12, 13, 14, and 24, nor did it err in granting summary judgment to the superintendent and denying summary judgment to petitioner on the issue of trial counsel's performance. Given controlling Court of Appeals case law at the time of petitioner's 2001 trial, the post-conviction court correctly concluded that trial counsel did not perform deficiently in not objecting to Steinberg's testimony. It follows that, although petitioner was entitled to partial summary judgment on the prejudice issue, *Jackson*, 364 Or at 331, the trial court did not err in entering judgment in the superintendent's favor.

Affirmed.