No. 24      May 3, 2021      549

## IN THE OREGON TAX COURT
## REGULAR DIVISION

### SANTA FE NATURAL TOBACCO COMPANY,
*Plaintiff,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5372)

On cross-motions to strike expert testimony, Defendant Department of Revenue (the department) argued that Plaintiff's expert testimony about tax policy was legal opinion that intruded on the court's province and did not assist the court as trier of fact to "understand the evidence or to determine a fact in issue." Plaintiff argued that the testimony did not constitute an opinion of law and that the court, sitting without a jury, was authorized and required to admit the testimony. The court concluded that the testimony related to the background and development of the law at issue, 15 USC section 381 (Public Law 86-272), could be considered by the court, but not as factual evidence. To the extent that the expert witnesses applied law to facts, the court concluded that the court was "equally qualified" to make those determinations and therefore the testimony was not admissible under Oregon Evidence Code (OEC) 702 because it did not help the court understand the evidence or determine the ultimate facts. Therefore, portions of the expert testimony were admitted to qualify the witnesses as experts and for the limited purpose of informing the court on the origins and background of the formation of Public Law 86-272.

Submitted on the parties' motions to strike expert testimony.

Mitchell A. Newmark, Blank Rome LLP, New York, filed the motion for Plaintiff.

Darren Weirnick, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant.

Decision rendered May 3, 2021.

**ROBERT T. MANICKE, Judge.**

### I.  INTRODUCTION

The substantive issue in this case is whether 15 USC section 381 (Public Law 86-272)[1] protected Plaintiff

---

[1] Public Law 86-272 provides, in pertinent part:

"(a) No state *** shall have power to impose *** a net income tax on the income derived within such State by any person from interstate commerce if

(taxpayer) from Oregon's net income tax for tax years 2010 through 2013. During those years, taxpayer was an out-of-state manufacturer, marketer, and distributor of cigarettes and other tobacco products. The department contends that taxpayer engaged in two activities that exceeded the protection of Public Law 86-272:

> "1. Oregon wholesalers' acceptance of returns from Oregon retailers of [taxpayer's] products covered by [taxpayer's] '100% Guarantee' to Oregon retailers, pursuant to agreements between [taxpayer] and Oregon wholesalers.

> "2. [Taxpayer's] Oregon employees' activity directly placing with Oregon wholesalers so-called 'pre-book' orders by Oregon retailers, which orders Oregon wholesalers were required to accept pursuant to agreements between [taxpayer] and the wholesalers."

Pub L 86-272, § 101, 73 Stat. 555 (1959). In response to the department's first allegation taxpayer asserts, alternatively, that Oregon wholesalers either did not act on taxpayer's behalf when accepting returns or were independent contractors engaging in an activity that is not considered a business activity of taxpayer under Public Law 86-272. In response to the second allegation, taxpayer asserts that the placing of pre-book orders with Oregon wholesalers was a "missionary" activity that Public Law 86-272 protects. The parties have stipulated to all relevant facts and have

---

the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

"*****

"(c) For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property."

agreed that the factual record is closed, stating that "at trial neither party may introduce witness testimony or exhibits that are not contained in this Joint Stipulation of Facts." Accordingly, the parties' arguments are based entirely on their respective legal positions as to whether the activities at issue subjected taxpayer to Oregon tax or were within the protection of Public Law 86-272.

As part of the parties' stipulations, taxpayer reserved the right to call one expert witness at trial, and the department reserved the right to present expert witness testimony in rebuttal. The court set a one-day trial on October 15, 2020, solely for the purpose of hearing testimony from the two witnesses. The parties were not required to, and did not, exchange the identity of the witnesses they expected to qualify as experts. As part of pretrial submissions, the department filed a motion *in limine* setting forth grounds for objections it anticipated raising to taxpayer's proffered expert testimony. At trial, the department made its objections to the admission of the testimony of taxpayer's witness. The court took the objections under advisement, allowed the testimony of both witnesses to proceed, and directed the parties to submit arguments in writing after trial for the court to address in this order, to be followed by post-trial briefing on the substantive issues. Taxpayer then offered testimony of Professor Richard D. Pomp as an "expert in tax policy and Public Law 86-272." On rebuttal, the department offered testimony of Benjamin F. Miller, also as "an expert in tax policy." Taxpayer's counsel objected and asked the court to exclude Miller's testimony if the court excludes the testimony of taxpayer's proffered expert Pomp. Because taxpayer's objections are conditional, and the department's objections are more extensive, the court frames this order by reference principally to the department's objections.

The department's general objection is that taxpayer's proffered testimony about tax policy is indistinguishable from legal opinion that intrudes on the province of the court and does not assist the court as trier of fact to "understand the evidence or to determine a fact in issue * * *" as required by Oregon Evidence Code (OEC) 702 (ORS 40.410). Taxpayer argues that the department bases its objection on the erroneous premise that "there is no such thing as tax

policy that exists apart from black letter law," and taxpayer argues that Pomp's testimony did not "cross the line into an opinion of law." Taxpayer also asserts that this court, as a court without a jury, is authorized and required to admit the testimony.

## II.   ISSUE

Is the proffered expert witness testimony admissible?

## III.   DISCUSSION

The court considers the proffered testimony and objections in two parts, consistent with the order of presentation: the origin and development of Public Law 86-272 and cases applying that statute, and the application of tax policy to the facts of this case. All of the testimony fits into one of these categories, except testimony related to the witnesses' qualifications, which the court addresses in the first part.

A.   *Testimony on Origin and Development of Public Law 86-272*

After addressing qualifying questions, discussed below, each witness testified generally about state taxation of interstate commerce under Public Law 86-272 and constitutional restrictions. Pomp testified about growth in interstate commerce after the Great Depression and about court decisions and concerns within the business community that led up to the passage of Public Law 86-272, as well as subsequent efforts to develop uniformity in state taxation through the period preceding *Wisconsin Dept. of Rev. v. William Wrigley, Jr. Co.*, 505 US 214, 112 S Ct 2447, 120 L Ed 2d 174 (1992). Miller briefly discussed the age of Public Law 86-272 and referred to *Wrigley* and *South Dakota v. Wayfair, Inc.*, 585 US ___, 138 S Ct 2080, 201 L Ed 2d 403 (2018).

The court considers whether this testimony constitutes legal analysis that is the province of the court and is not a proper subject for expert testimony. *See Jackson v. Franke*, 304 Or App 503, 512, 467 P3d 779, *rev allowed*, 367 Or 220 (2020) (reviewing trial court's denial of criminal defendant's claim for post-conviction relief based on ineffective assistance of counsel; approving trial court's

exclusion of criminal defense lawyer's testimony on "correct interpretation of case law"); *see generally Stobie Creek Investments, LLC v. U.S.*, 81 Fed Cl 358, 360 (2008) (in taxpayer's challenge to income tax adjustments, declining to admit taxpayer's proffered expert testimony of tax professor and tax attorney that "testifies about what the law is or directs the finder of fact how to apply law to facts"); Laird C. Kirkpatrick, *Oregon Evidence* 648 (7th ed 2020) ("In general, questions of law are for the court and are not a proper subject for expert testimony to the jury.").

The court starts by considering whether a field of tax policy may exist separate from the field of tax law. The parties have not attempted to define "tax policy." The court generally understands tax policy to focus on the choices that governmental leaders make in response to, or in anticipation of, economic, social, and other concerns related to taxation. *See generally Webster's Third New Int'l Dictionary* 1754 (unabridged ed 2002) (defining "policy" as "a definite course or method of action selected (as by a government, institution, group, or individual) from among alternatives and in the light of given conditions to guide and usually determine present and future decisions"). Because taxation is an inherently governmental function, the court focuses on policy-making by government actors. *See id.* at 2345 (defining "tax" as a "charge imposed by legislative or other public authority * * * for public purposes"). Based on this broad understanding, the legislative branch has a primary role in tax policy-making, which it exercises by hearing the concerns of the public and of interested persons, choosing which concerns to address and how to do so, and writing laws that reflect those choices. The legislative branch also may make policy less formally and without writing laws, for example, by convening or encouraging work groups that result in negotiated solutions without legislation, or by engaging in budgetary and other oversight of the executive branch. Even holding hearings and conducting other public factfinding efforts might constitute a definite course of action intended to influence public opinion and change the course of events.[2]

---

[2] The court does not rule out the possibility that other actors within or without government may influence or participate in making tax policy.

The court concludes that a field of tax policy exists that includes, but is broader than, the field of tax law. The study of tax policy may, for example, encompass historical evidence of the forces leading to policy-makers' choices, alternatives they could have pursued, and social and economic consequences of enacted tax laws. The court does not doubt that policy-makers and scholars in a range of disciplines such as law, but also history, economics, and other social sciences, may achieve a high level of understanding of tax policy, thus defined, and may help the court by adding context to the text of the law. This seems to have been one of taxpayer's aims in presenting expert testimony at trial. During taxpayer's introduction to its case in chief, it urged the court to "hear about the policy aspects of what was driving Public Law 86-272. What is happening in the nexus universe regarding Public Law 86-272."

Having identified a field constituting tax policy, the court considers the qualification of each party's witness.[3] Richard Pomp is a distinguished scholar: He is a professor at the University of Connecticut Law School and at the New York University LLM program in taxation, the author of numerous articles and teaching materials, and a frequent speaker at tax-related conferences. The department acknowledges his expertise in tax law but argues there is no proof of his expertise in tax policy. It is uncontested, however, that Pomp has drafted tax laws as a consultant for several states and led a commission to reform New York's corporate and personal income taxes. The court recognizes this experience in particular as an indicator of his qualification as an expert in tax policy. By definition, he worked for and with policy-makers, and at a bare minimum this task has required him to understand their tax policy goals and translate them into tax laws. Benjamin Miller, a graduate of Stanford Law School, had a long career with the California Franchise Tax Board working on matters involving multistate taxpayers, and he served as California's representative to the Multistate Tax Commission. Taxpayer did not object to Miller's qualification. The court finds both witnesses qualified as experts in tax policy.

---

[3] To do so, the court will admit as factual evidence the portions of testimony related to each witness's qualifications, as identified at the end of this order.

The court next considers whether it can benefit from an expert's view of tax policy as background. The court decides statutory cases based on legislative intent. When a federal statute governs the case, as Public Law 86-272 does here, the court applies federal principles of statutory construction to better understand Congress's intent. *Etter v. Dept. of Rev.*, 360 Or 46, 52, 377 P3d 561 (2016) (Oregon courts must apply federal law when interpreting a federal statute, which requires an analysis of the statute's text, structure, and legislative history). Federal principles allow the court to consider a range of factors as relevant to the "structure" or "context" of the statute. *See id.* (citing *Dept. of Rev. of Or. v. ACF Industries*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994)). However, the context supplied by a deeper understanding of tax *policy* can be useful to the court only if it reveals something that Congress did or did not intend when it wrote the *law*. Therefore, the very insights that make the proffered information helpful to the court, when presented as witness testimony, also risk "intruding on the province of the court." *See Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or App 416, 442-43, 395 P3d 892 (2017) ("It is well established that the adjudication of an 'issue of law' is generally the province of the judge, while an 'issue of fact' is ordinarily determined by a jury.").

As a court that sits always in equity and without a jury, this court has few concerns about intrusion on the province of the court when the subject of the testimony is the origin and development of the law. *See* ORS 305.425. The court can determine for itself whether the testimony aids the court's understanding of the law and can assign the testimony whatever weight is merited. Nor does testimony of that limited sort implicate OEC 702, because the court does not hear it in the court's capacity as "trier of fact." *See* OEC 702 (allowing expert testimony if "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue"). The concerns about expert testimony regarding legal background, as identified in cases and scholarly articles, appear to stem primarily from the risk that testimony on that subject during trial could confuse a jury that receives a different summary of the law in jury instructions. *See* Charles W. Ehrhardt, *The Conflict*

*Concerning Expert Witnesses and Legal Conclusions*, 92 W Va L Rev 645, 666-71 (1990) (courts have held legal opinion testimony inadmissible under Federal Rule of Evidence 702 because it "interfere[s] with the province of the trial judge to determine and instruct the jury on the law"); Thomas E. Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U Kan L Rev 325, 337 (1992) ("If the expert's testimony conflicts with that of the judge, the testimony may actually make the jury's determination more difficult.").

Having no risk of jury confusion, the court concludes that so much of each party's proffered expert testimony as is limited to the origins and background of policy-makers' decisions in the formation of the law will be admitted for the purpose of informing the court in its role as interpreter of the law. This means that the parties may refer in post-trial briefing to the portions of testimony specifically identified at the end of this order as statements by recognized experts on the background and development of the law. The court will consider those statements along with other sources, such as published materials, and will assign to them whatever weight the court considers them to merit based on factors such as their grounding in sources available to the court and their internal logic and inherent persuasiveness. The court will not admit these portions of testimony as factual evidence.[4]

B.   *Testimony on Application of Tax Policy to Facts*

The court now considers the department's objections to proffered testimony on the application of tax policy (which, as discussed, may encompass tax law) to the facts of this case. In contrast to general background testimony on policy or the law, this kind of testimony is squarely governed by OEC 702. The legislature has chosen to make the Oregon Evidence Code applicable specifically to this division of the court, in full awareness that matters in this court are "tried without a jury." OEC 101(1)(a) (OEC applies to Regular Division proceedings); ORS 305.425(1) (no jury).

---

[4] The court encourages counsel in future to consider the alternatives available in this court. Although a trial court, this court has an established *amicus curiae* procedure, as discussed in greater detail below. *See* Tax Court Rule (TCR) 48. And, of course, parties may cite the views of experts on policy or law in regular briefing.

To be admissible under OEC 702, expert testimony must help the court, in its role as trier of fact, determine an issue of fact or understand the evidence:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

OEC 702. In 1981, Oregon adopted verbatim the then-existing text of Rule 702 of the Federal Rules of Evidence and the accompanying commentary. OEC 702 Commentary (1981) ("Oregon Rule of Evidence 702 *** is identical to Rule 702 of the Federal Rules of Evidence, and the Legislative Assembly adopts the commentary of the federal advisory committee[.]"). Under OEC 702 and case law, the court should admit testimony of a qualified expert if the testimony would "aid or *** help the [finder of fact] to conclude the ultimate question framed by the pleadings.'" *Brown v. Boise-Cascade Corp.*, 150 Or App 391, 946 P2d 324 (1997) (applying OEC 702; quoting *Yundt v. D & D Bowl, Inc.*, 259 Or 247, 258, 486 P2d 553 (1971)); *see also* OEC 701 (requiring that lay testimony be "[h]elpful to a clear understanding of *** the determination of a fact in issue"). On the other hand, the court should not admit expert testimony if the finder of fact "clearly is equally qualified [to determine the facts] without help from opinion testimony." *Yundt*, 259 Or at 259. In the "area between the clearly qualified [trier of fact] and the clearly unqualified [trier of fact]," the court has "a certain latitude of decision in excluding or receiving expert opinion testimony." *Id.*; *see State v. Jesse*, 360 Or 584, 599, 385 P3d 1063 (2016) (Supreme Court's "decisions have confined the role of judicial discretion to circumstances involving factual issues neither clearly within, nor beyond, the jury's assumed level of understanding"). When a witness seeks to apply the law to the facts of a case, Oregon courts repeatedly have held the testimony inadmissible under OEC 702. *E.g.*, *Jackson*, 304 Or App at 512; *State v. Woodford*, 293 Or App 484, 487-88, 428 P3d 971 (2018) (trial court committed non-harmless error by admitting as expert testimony police officer's statement that he saw "'no elements of a crime being committed'"); *see also Olson v. Coats*, 78 Or App 368, 370-71,

717 P2d 176 (1986) (citing common law) ("A witness may not testify regarding a legal conclusion.").

The court finds that the testimony not addressed in the first part of this order falls outside the range of testimony that the court must, or may, admit. The testimony applying tax *policy* to the facts is primarily limited to application of tax *law* to the facts.[5] At trial, Pomp discussed Justice Scalia's focus in *Wrigley* on whether and where "solicitation" occurs in applying Public Law 86-272. He also described *Wayfair* as determining that it is "sound policy to maintain a level playing field between local merchants that are selling and collecting the sales tax and remote vendors that are selling." Further, Pomp discussed returns under taxpayer's business model and opined on rights of parties under taxpayer's contracts and under Public Law 86-272 pursuant to various agency theories. He went on to discuss application of agency law and "ancillary" principle under *Wrigley* to pre-book orders.

The department's expert, Miller, differentiated between pre-solicitation and post-sale activities under *Wrigley*. He continued with testimony applying Public Law 86-272 to pre-book orders and gave testimony as to "control" on cross-examination. As the court interprets *Jackson* and *Woodford*, the court is deemed to be "equally qualified," to the same extent as any legal expert, to apply the law in determining ultimate facts. Under *Yundt*, therefore, the court lacks discretion to admit the testimony. *See* 259 Or at 259.

To the extent that either witness mentioned policy other than Public Law 86-272 or case law, as applied to the facts, the references are to general ideas or principles, without citation. Professor Pomp described commercial activities generally as win-win for buyers, sellers, states, and localities. Miller offered that "everybody's been tightening down on this idea that * * * if you're doing a certain level of business, why it's reasonable to expect—you know, the state gets compensation for that." As to these relatively few references, the court likewise concludes that it is "equally qualified,"

---

[5] The court uses the term "tax" policy or law broadly, encompassing all law governing the contracts in evidence, as well as concepts such as the degree of control that a principal must exert before an agent's actions are attributed to the principal.

and that the testimony therefore does not help the court understand the evidence or determine the ultimate facts as required by OEC 702.

Taxpayer urges a more liberal standard for admission of its proffered testimony because this court conducts bench trials. (Its brief cited *Builders Steel Co. v. Comm'r*, 179 F2d 377 (8th Cir 1950).) But beyond the court's statutory *requirement* to apply OEC 702 when acting as factfinder, the court believes that doing so will help the court create a clear record for appeal. The Supreme Court reviews this court's decisions *de novo* on "errors or questions of law" but as to factual questions applies the standard of "lack of substantial evidence in the record." ORS 305.445. Avoiding expert testimony on application of the law to the facts will better enable the Supreme Court, upon review of this or any case, to determine the capacity in which this court acts when discussing the law and the factual evidence.

Moreover, the legislature has seen fit to allow this court some latitude to promulgate its own "rules of practice and procedure," and the court several years ago used that authority to incorporate procedures for an *amicus curiae* to offer views on a case pursuant to TCR 48. *See* ORS 305.425(3). The court generally will entertain an application by any person, with or without a private interest in the case, to submit a brief as an *amicus curiae* in summary judgment proceedings. The court also will consider an application to participate in oral argument or in argument at trial. *See* TCR 48 E, F. The court's decision to allow an *amicus curiae* to appear is discretionary and may be based on the court's view of the value of the applicant's participation.[6] The court believes that the *amicus* rule—unusual if not unique among Oregon trial courts—allows the court to entertain either an explanation of the policy context affecting the development of the law, or a policy-based interpretation of the facts, or both. This alternative gives the *amicus* latitude to make its point as persuasively as possible while leaving the parties

---

[6] As the court stated at the beginning of trial in this case, in the course of reserving its ruling on the admissibility of expert witness testimony, the value to the court of any presentation on tax policy would depend largely on the extent to which the applicant relies on credible, cited sources that substantiate the policy explanation and that are available to the court.

and the court free to adopt, add to, or refute the background or arguments based on the admitted evidence.

In this case, the court thus admits and excludes portions of the testimony as follows. The portions admitted as factual evidence of witness qualification are Pomp's testimony at Transcript pages 28 through 48 and Miller's testimony at Transcript page 143 through page 153, line 2, as well as related testimony on cross-examination and redirect at Transcript page 117, line 10, through page 126, line 12 (Pomp) and page 162, line 16, through page 165, line 2 (Miller). The portions admitted for the limited purpose of informing the court on the origins and background of policymakers' decisions in the formation of the law, as described above, are Pomp's testimony at Transcript page 50 through page 68, line 18, and Miller's testimony at Transcript page 153, line 11, through page 155, line 19. The court excludes all remaining testimony and will not consider it for any purpose in deciding the case.[7]

This court has routinely heard expert testimony and dealt with a range of objections. However, the issue of the admissibility of expert testimony on tax policy has not, to the court's knowledge, been contested previously. Having reached the foregoing conclusions with the assistance of the parties' briefs, the court in this case will entertain applications of any *amici curiae* to submit briefs pursuant to TCR 48, should they desire to do so. Any such brief of an *amicus curiae* is due seven days after the due date of the post-trial brief for the party with which the *amicus* is aligned or, if the *amicus* is not aligned with any party, seven days after taxpayer's post-trial brief is due. *See* TCR 48 D.

### IV.   CONCLUSION

The court admits and excludes the proffered testimony as listed above. Now, therefore,

IT IS ORDERED that Defendant's Motion to Strike Expert Testimony is granted in part and denied in part; and

---

[7] The court therefore finds it unnecessary to consider the parties' other objections to specific testimony, such as misstatement of the record, attempts to introduce new evidence, or testimony beyond the scope of a witness's expertise.

IT IS FURTHER ORDERED that Plaintiff's motion, made orally at trial, to strike the testimony of Benjamin Miller is granted in part and denied in part.